**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 1, 2026

Richard P. Rollo, Esquire
Travis S. Hunter, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

Margaret M. DiBianca, Esquire
DiBianca Law, LLC
1201 North Orange Street, Suite 504
Wilmington, Delaware 19801

RE: *Kevin Leiske et al. v. Robert Gregory Kidd et al.*,
 C.A. No. 2025-0426-CDW (LWW)

Dear Counsel,

This is an advancement case pending before a Magistrate in Chancery. It was reassigned to me for the limited purpose of resolving exceptions to the Magistrate's final report on advancement.

On January 22, 2026, the plaintiffs filed an answering brief in opposition to the defendants' exceptions (the "Answering Brief") to the Magistrate's advancement order.[1] On January 27, the defendants' reply brief identified that the Answering Brief contained fictitious citations, fabricated quotations, and hallucinated legal propositions.[2]

---

[1] Pls.' Answering Br. in Opp'n to Defs.' Exceptions (Dkt. 62).

[2] Reply Br. in Further Supp. of Defs.' Exceptions to Magistrate's Jan. 2, 2026 Report (Dkt. 65) 12-13 nn. 4-6, 16 n.7; *see Harris as Next Friend of RNH v. Adams*, 757 F. Supp. 3d 111, 119 n.3 (D. Mass. 2024) ("AI hallucination is a phenomenon wherein a large language model (LLM)—often a generative AI chatbot or computer vision tool—perceives patterns or objects that are nonexistent or imperceptible to human observers, creating

The next day, on January 28, plaintiffs' counsel filed a letter acknowledging the use of a generative artificial intelligence ("GenAI") tool to revise the text of the Answering Brief.[3] Counsel admitted failing to verify the accuracy of the citations before filing, attributing the oversight to a paralegal's review.[4] The plaintiffs also filed a corrected Answering Brief.[5] Although this submission removed quotation marks around erroneous statements of law, it did not correct the inaccurate descriptions.[6]

The defendants' counsel then filed a letter detailing the remaining misrepresentations in the corrected Answering Brief and identifying similar citation problems in the plaintiffs' summary judgment briefing.[7]

---

outputs that are nonsensical or altogether inaccurate." (quoting *What Are Hallucinations?*, IBM, https://www.ibm.com/topics/ai-hallucinations (last visited July 1, 2026))).

[3] Letter Providing Corrected Answering Br. in Opp'n to Defs.' Exceptions (Dkt. 68); *see also An v. Archblock, Inc.*, 2025 WL 1024137, at *1 (Del. Ch. Apr. 4, 2025) (ORDER) (defining "GenAI" as "models or tools that generate new content, including text, based upon machine learning from existing data").

[4] Letter Providing Corrected Answering Br. in Opp'n to Defs.' Exceptions (Dkt. 68).

[5] Pls.' Corrected Answering Br. in Opp'n to Defs.' Exceptions (Dkt. 69) ("Pls.' Corrected Answering Br.").

[6] *See* Letter in Resp. to Pls.' Letter Regarding GenAI Errors (Dkt. 70) 1-2 (asserting that the corrected brief "merely fixes citation errors as if they are typographical only" and "still mischaracterizes some of the Courts' analyses").

[7] *Id.* at 2-4.

On January 29, plaintiffs' counsel filed a letter faulting the defendants' counsel for failing to "meet and confer" about the errors before bringing them to the court's attention.[8]  The letter insisted on the accuracy of the underlying legal propositions in the Answering Brief, stating that the cited authorities "are real" and "support the arguments advanced."[9]  Counsel also accused the defendants of using the GenAI errors to gain a "litigation advantage."[10]

On February 2, I issued a letter opinion overruling the defendants' exceptions and affirming the Magistrate's final report.[11]  In doing so, I expressly retained jurisdiction to determine what remedy, if any, should issue to address the non-existent citations and misrepresentations in the plaintiffs' Answering Brief.[12]

In the interim, on April 2, the Magistrate resolved the plaintiffs' motion for contempt and sanctions concerning the defendants' advancement obligations.[13]  No exceptions were taken to that report, leaving the collateral issue of plaintiffs' counsel's GenAI misuse ripe for resolution.

---

[8] Letter in Resp. to Defs.' Jan. 28 Letter (Dkt. 71) 1.

[9] *Id.* at 2.

[10] *Id.*

[11] Letter Op. Resolving Exceptions (Dkt. 74).

[12] *Id.* at 7 n.40 ("I retain jurisdiction to determine what remedy, if any, should issue to address the GenAI errors in the plaintiffs' brief.").

[13] *See* Tr. of Apr. 2, 2026 Telephonic Report of the Magistrate on Pls.' Mot. for Contempt and Sanctions (Dkt. 100).

Legal Standard and Analysis

Court of Chancery Rule 11(b) provides that an attorney or litigant presenting a pleading or written motion to the court certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]" the "legal contentions" made "are warranted by existing law."[14] An attorney's signature on a court filing is not a procedural formality; it is a certification to the tribunal.[15]

GenAI offers a powerful tool to streamline legal practice and assist in advocacy.[16] Using GenAI in preparing court filings is "not inherently problematic"—provided the attorney (or litigant) carefully verifies the accuracy of the output.[17] Here, counsel acknowledges that the GenAI output was not verified before the Answering Brief was filed.[18]

---

[14] Ct. Ch. R. 11(b)(2).

[15] *See Crumplar v. Superior Ct. ex rel. New Castle Cnty.*, 56 A.3d 1000, 1005-06 (Del. 2012) (quoting Rule 11 to emphasize that an attorney's signature "constitutes a certificate" that the filing is warranted by *ex*isting law after a reasonable inquiry).

[16] *An v. Archblock, Inc.*, 2025 WL 1024661, at *2 (Del. Ch. Apr. 5, 2025) ("GenAI streamlines legal research, assists in drafting documents, and supports efficient document review and summarization.").

[17] *Id.* ("The use of GenAI in legal work is not inherently problematic.").

[18] *Id.* ("GenAI carries significant risks to the legal system if it is used carelessly.").

The submission of hallucinated legal propositions raises an inference of a Rule 11(b) violation, requiring counsel to show cause why sanctions should not issue.[19] A fictitious citation is not "existing law."[20] The duty of candor to the court, and the obligation to conduct a reasonable inquiry under Rule 11, are nondelegable.[21] Counsel cannot discharge those obligations by relying on a paralegal, much less on an artificial intelligence program.

Here, the concerns raised by the initial filing were compounded by counsel's response after the errors were identified.[22] In correcting the Answering Brief, counsel merely deleted quotation marks while preserving the fabricated legal synthesis.[23] Additionally, counsel's assertion that parties should meet and confer

---

[19] *See Lexos Media IP LLC v. Overstock.com, Inc.*, 2026 WL 265581, at \*1, \*9, \*17 (D. Kan. Feb. 2, 2026) (admonishing and sanctioning attorneys for filing "defective legal citations created through the use of generative artificial intelligence"); *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1262, 1267-68 (N.D. Ala. 2025) (disqualifying an attorney who submitted unverified, hallucinated GenAI citations, finding the conduct reflected a "complete and utter disregard for [his] professional duty of candor" and "recklessness in the extreme . . . tantamount to bad faith").

[20] Ct. Ch. R. 11(b); *see Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) (holding that "[a] fake opinion is not 'existing law'").

[21] *See Lexos*, 2026 WL 265581, at \*9 (noting the duty to verify is "nondelegable").

[22] *See Mata*, 678 F. Supp. 3d at 464 (finding bad faith where attorneys "advocated for the fake cases and legal arguments . . . after being informed by their adversary's submission that their citations were non-existent").

[23] For example, the corrected Answering Brief continues to rely on *Perconti v. Thornton Oil Corp.* for the principle that "Delaware courts recognize that fiduciaries almost always have personal financial stakes aligned with the entities they serve." Pls.' Corrected Answering Br. 9; *see Perconti v. Thornton Oil Corp.*, 2002 WL 982419 (Del. Ch. May 3,

before alerting the court to GenAI errors misstates the purpose of that requirement. The meet-and-confer requirement is designed to facilitate the resolution of disputes among parties. There is nothing to negotiate or compromise when an attorney submits false citations to a tribunal, and opposing counsel is justified in bringing such misrepresentations directly to the court's attention.

Finally, Rule 11(c)(1) mandates that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for violations committed by its partners, associates, or employees."[24] Because this incident may implicate the firm's training, supervision, and deployment of GenAI, the firm must answer alongside the individual signatory.[25]

Rule to Show Cause

Richard P. Rollo, Esq.—the signatory to the brief and letters—and Richards, Layton & Finger, P.A. ("RLF") are ordered to show cause why they should not be sanctioned under Rule 11(c) and this court's inherent authority.[26]

---

2002). That concept is absent from *Perconti*, which concerns the use of corporate funds for one's personal benefit. *Perconti*, 2002 WL 982419, at *1.

[24] Ct. Ch. R. 11(c)(1).

[25] *E.g.*, *Mata*, 678 F. Supp. 3d at 465; *Johnson*, 792 F. Supp. 3d at 1261-62.

[26] *See* Ct. Ch. R. 11(c)(3) (confirming the court's authority to "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)"); *see also* Ct. Ch. R. 11(c)(1) (stating that the court may impose sanctions only "after notice and a reasonable opportunity to respond").

By no later than July 15, 2026, Mr. Rollo and an authorized representative of RLF must each file an affidavit showing good cause, if any, why sanctions should not be imposed.

The affidavit of Mr. Rollo must address:

- A timeline of how and when the GenAI tool was utilized in drafting the Answering Brief, including who entered the prompts and how the generated output was incorporated into the Answering Brief.

- A description of the cite-checking process before filing the Answering Brief, including instructions given to the paralegal(s) involved, the tools used for verification (e.g., Westlaw, LexisNexis), whether attorneys verified the cited text, and whether the paralegal's cite checking edits were incorporated into the final Answering Brief.

- An explanation of the remedial steps taken between January 27, 2026 (when opposing counsel flagged the errors) and January 28, 2026 (when the corrected Answering Brief was filed). Mr. Rollo must explain why quotation marks were removed but flawed legal propositions were retained, and whether he personally reviewed the underlying judicial opinions at that time.

The affidavit of RLF must address:

- The firm's written policies, guidelines, and restrictions regarding the use of GenAI by attorneys and staff (including paralegals) that were in effect during December 2025 and January 2026.

- How the firm's policies regarding GenAI were communicated to Mr. Rollo and the other individuals involved in this matter.

- The internal procedures, technological safeguards, or training programs the firm has implemented or plans to implement to ensure that the legal authority contained in the firm's future court filings is accurate.

- A showing of "exceptional circumstances," if any exist, demonstrating why the law firm should not be held jointly responsible for any Rule 11 violations committed by its partner.

Upon receipt and review of the affidavits, I will determine whether an evidentiary hearing or oral argument is necessary, or whether the Rule to Show Cause will be resolved on the papers.

IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor